**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| JAMES RICHARD REGUERO,<br><br>        Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. ED CV 16-2408-AS<br><br>**MEMORANDUM OPINION** |

**PROCEEDINGS**

On November 21, 2016, Plaintiff filed a Complaint seeking review of the denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 13). On April 17, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 16, 17). On March 13, 2018, the parties filed a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See 42 U.S.C. § 205(g).

1

Joint Stipulation ("Joint Stip."), setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 28).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On January 29, 2010 and February 6, 2010, Plaintiff, formerly employed as an automotive technician, (see AR 163), filed DIB and SSI applications alleging an inability to work because of a disability since August 11, 2009. (AR 135, 142). On November 4, 2011, an Administrative Law Judge, Marti Kirby ("ALJ"), heard testimony from a vocational expert and Plaintiff, who was represented by counsel. (See AR 32-76). On December 6, 2011, the ALJ issued a decision denying Plaintiff's applications. (See AR 12-27). The Appeals Council denied Plaintiff's request to review the ALJ's decision on January 31, 2013. (AR 1-4, 7). On Marchy 28, 2013, Plaintiff sought review of the decision by filing a Complaint in this Court. (See Reguero v. Covin, EDCV 13-0576-AS, Dkt. No. 1). On April 30, 2014, the Court issued an order vacating the Commissioner's decision and remanding the case for further administrative proceedings. (Id., Dkt. No. 26, 27).

On remand, the same ALJ held a hearing on February 10, 2015, during which he heard testimony from another vocational expert, Lizet Campos ("VE"), and Plaintiff, who was represented by counsel. (AR 466-504). On March 12, 2015, the ALJ issued a partially favorable

decision. (AR 444-60). On September 21, 2015, the ALJ issued a revised decision that was "identical to the original decision except for disapproval of the fee agreement, as it [was] a two-tier fee agreement." (AR 423; see AR 423-39).

The ALJ applied the five-step sequential process in evaluating Plaintiff's case. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 11, 2009, the alleged onset date. (AR 426). At step two, the ALJ found that Plaintiff has had the following severe impairments since the alleged onset date: "chronic fatigue syndrome; fibromyalgia; osteoarthritis in the shoulders and hands; obesity; and social anxiety disorder." (Id.). The ALJ further found that since January 2, 2012, Plaintiff has had the additional severe impairments of "stroke" and "left sided weakness." (Id.). At step three, the ALJ found that Plaintiff's impairments do not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

Before proceeding to step four, the ALJ found that in the period between August 11, 2009, the alleged onset date, and January 2, 2012, Plaintiff had the following Residual Functional Capacity ("RFC")[2]:

> [Plaintiff could] perform light work . . . except [he could] lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; he [could] sit, stand and/or walk

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and non-exertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

for six hours out of an eight-hour workday, but only one
hour at a time and would need to alternate positions every
15 minutes for a brief 1-3 minutes; he [could] perform
occasional bending, stooping, squatting, kneeling,
crawling, and balancing; he [could] occasionally climb
ramps and stairs, but [could not] climb ropes, ladders, or
scaffolds; he [could] occasionally perform overhead
reaching bilaterally; he [was] precluded from working at
unprotected heights or around hazardous or moving
machinery; he [was] limited to a non-public working setting
with only occasional interaction with supervisors and
indirect interaction with co-workers; and he [was] limited
to simple routine repetitive tasks.

(AR 427). The ALJ found that beginning on January 2, 2012, Plaintiff has had the following RFC:

[Plaintiff can] perform light work . . . except [he] can
lift no more than 10 pounds; he can stand and/or walk for
four hours out of an eight-hour workday, but no more than
15 minutes at a time; he can sit for 6 hours in an 8-hour
workday with brief position changes after 30-45 minutes for
3-5 minutes at a time; he can perform occasional bending,
stooping, squatting, kneeling, crawling, and balancing; he
can occasionally climb ramps and stairs, but cannot climb
ropes, ladders, or scaffolds; he is precluded from working
at unprotected heights, moving machinery, or other hazards;
he must avoid concentrated exposure to walking on uneven

4

>             terrain, extreme temperatures, large crowds, and loud
>             noises; he is limited to non-public work with only
>             occasional non-intense interaction with supervisors or co-
>             workers; he cannot perform jobs requiring teamwork, but can
>             perform object-oriented work; he can occasionally perform
>             overhead reaching bilaterally; he can frequently perform
>             fine and gross manipulation; he cannot perform jobs that
>             require forceful gripping or grasping; he cannot
>             repetitively push and/or pull with the lower extremities,
>             such as the use of foot pedals, with the left lower
>             extremity; and he would require an additional 20-30 minute
>             break in addition to regular work breaks any time during
>             the regular workday.

(AR 434-35).

At step four, the ALJ noted that Plaintiff has been unable to perform any past relevant work since August 11, 2009. (AR 435).

Relying on the VE's testimony at step five, the ALJ found that before January 2, 2012, Plaintiff, with his age, education, work experience, and RFC, could perform the following representative jobs existing in significant numbers in the national economy: garment folder (Dictionary of Occupational Titles ("DOT") 789.687-066); table worker (DOT 783.687-030); and dowel inspector (DOT 669.687-014). (AR 437).

The ALJ found that beginning on January 2, 2012, Plaintiff has not been able to perform any jobs existing in significant numbers in the national economy. (AR 438).

Accordingly, the ALJ concluded that Plaintiff "was not disabled prior to January 2, 2012, but became disabled on that date and has continued to be disabled through the date of th[e] decision." (Id.).

On September 28, 2016, the Appeals Council denied Plaintiff's request to review the ALJ's decision (AR 398-400, 412, 414). Plaintiff now seeks judicial review of the ALJ's decision which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a

court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in (1) rejecting Plaintiff's testimony and (2) relying on the VE's testimony regarding job numbers. (See Joint Stip. at 7-36).

**DISCUSSION**

After considering the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[3]

**A.  The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

An ALJ's assessment of a claimant's credibility is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v.

---
[3] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen, 80 F.3d at 1282. Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Id. at 1284. Absent affirmative evidence of malingering, however, the ALJ may reject a plaintiff's testimony only "by offering specific, clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2)

8

   unexplained or inadequately explained failure to seek
   treatment or to follow a prescribed course of treatment;
   and (3) the claimant's daily activities.

Id. An ALJ may also consider observations of treating and examining physicians and other third parties. Id.

  Here, the ALJ found Plaintiff's allegations "less than fully credible." (AR 429). This determination was based on the ALJ's consideration of Plaintiff's daily activities, treatment history, work history, and the objective medical record. (See AR 428-34).

  The ALJ found that Plaintiff "has engaged in a somewhat normal level of daily activity and interaction," which included "caring for his own personal hygiene, preparing simple meals, completing basic household chores, driving, running errands, and grocery shopping." (AR 429; see AR 172-74, 283). The ALJ remarked that some of Plaintiff's activities require abilities that are needed for maintaining employment. (AR 429). Plaintiff's ability to perform various everyday activities is a legitimate basis to discount Plaintiff's credibility. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (claimant's allegations of disability properly discredited where claimant was able to care for her own personal needs, cook, clean, shop, interact with her boyfriend, and manage finances). Even if Plaintiff's activities do not show that he was unimpaired, the ALJ reasonably found them inconsistent with the level of impairment that Plaintiff alleges. See Molina v. Astrue, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty

functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

The ALJ noted that Plaintiff "had gone on several vacations since the alleged onset date, including gambling in Laughlin." (AR 429; see AR 48-49, 280, 304). Plaintiff contends that the ALJ mischaracterized the evidence because there were only two vacations, in the summers of 2010 and 2011, and "[b]oth were for a brief few days which [Plaintiff] did not enjoy." (Joint Stip. at 16). At the hearing in 2011, Plaintiff testified that during his camping trip with his wife that summer, he "pretty much stayed in the RV" and "felt anxious and sick to his stomach," but he also stated that the trip was "kind of nice, because [he and his wife] were able to go on a walk together." (AR 49, 68). He stated that his camping trip the previous summer "just wasn't as fun" as trips in the past "because [he] wasn't drinking" anymore. (AR 68). Plaintiff reported in May 2010 that he "won money" in Laughlin, suggesting that he was able to participate in casino gambling. (AR 280, 304). In contrast, Plaintiff testified at the 2011 hearing that the chief cause of his inability to work was his "fear of coming outside." (AR 42). Therefore, notwithstanding Plaintiff's contentions, it was reasonable for the ALJ to find that Plaintiff's "decision to go on vacation, particularly a vacation that placed him [in] a likely crowded casino, tends to suggest that [his] symptoms and limitations may have been somewhat overstated." (AR 429).

The ALJ also found that Plaintiff's treatment history has not reflected the existence of a debilitating condition. The ALJ remarked that Plaintiff has made "relatively infrequent" trips to the doctor, with "significant gaps in treatment." (AR 429). Moreover, the ALJ noted that Plaintiff's treatment "has been essentially routine and conservative, primarily in the form of medications." (Id.). Plaintiff contends that the ALJ did not "point to the record to demonstrate that there was anything more the doctors wanted [Plaintiff] to do." (Joint Stip. at 14). To the contrary, the ALJ gave examples, including Plaintiff's failure to follow through with his treating doctor's referral to physical therapy, as well as his decision to discontinue mental health treatment in 2010. (AR 429-30). The record supports this finding. A treatment note from October 2009 states, for example, that when Plaintiff presented with shoulder pain, he "opted for conservative measures but was offered Specialist and [doctors] urged Physical Therapy." (AR 210). Plaintiff has stated that cost was the reason why he has not done physical therapy (at $40 per session) and why he stopped his mental health treatment in 2010. (See AR 56, 482-84). The ALJ acknowledged this explanation but discredited, noting that Plaintiff nonetheless affords a pack of cigarettes a day, as well as vacations and a gambling trip in 2010, thus indicating that Plaintiff's "symptoms were not as severe or as limiting as he purports." (AR 430; see AR 485).

The ALJ also noted that Plaintiff "stopped working due to a business-related layoff rather than because of the allegedly disabling impairments," and Plaintiff suggested that he would have

11

kept working but for the layoff. (AR 430; see AR 71, 283). Along with the other factors, this was a persuasive basis on which to discount the credibility of Plaintiff's complaints. See Brackett v. Comm'r of Soc. Sec. Admin., 468 F. App'x 754, 755 (9th Cir. 2012) (ALJ permissibly discounted claimant's subjective pain testimony partly because claimant stopped working only when he was laid off due to a plant closure); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ did not err in discrediting claimant's subjective complaints where claimant "stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured"); Drouin v. Sullivan, 966 F.2d 1255, 1256, 1258 (9th Cir. 1992) (ALJ did not err in rejecting credibility partly on the basis that claimant was laid off for business reasons, not impairments).

In addition, the ALJ provided a detailed review of the medical evidence, (see AR 431-33), noting that, among other evidence, in August 2010, Plaintiff's myalgia and myositis were under fair control, and his Norco medication helped alleviate his pain, (AR 359-60, 431), and that examining doctors described Plaintiff as alert and oriented, not agitated or anxious, and in no apparent distress. (See, e.g., AR 284, 347, 350, 354). The ALJ appropriately considered such evidence in determining that the record did not support the severity of Plaintiff's complaints. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Accordingly, the ALJ properly discounted Plaintiff's credibility by giving specific, clear, and convincing reasons that are supported by substantial evidence in the record.

**B.  The ALJ Did Not Err in Relying on the VE's Testimony at Step Five**

Plaintiff contends that the ALJ erred by relying on the VE's testimony to conclude that there are a significant number of jobs that Plaintiff can perform during the period between August 11, 2009 and January 2, 2012. (See Joint Stip. at 24-31). Plaintiff contends that the job numbers that the VE provided actually represented aggregates of various occupations, not simply the jobs that the ALJ found Plaintiff can perform – garment folder (DOT 789.687-066706.684-022); table worker (DOT 783.687-030); and dowel inspector (DOT 669.687-014). (See id.; AR 437).

The ALJ bears the burden at step five to establish that work exists in significant numbers in the national economy that Plaintiff can perform. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). An ALJ may properly rely on the testimony of a VE regarding job numbers in the national economy to make this showing. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1218).

At the hearing on February 10, 2015, the VE testified that there are approximately 427,000 garment folder jobs in the national

13

economy; approximately 426,000 table worker jobs; and approximately 472,000 dowel inspector jobs. (AR 491). The VE stated that these job numbers "are based on occupational employment statistics," which the VE obtained from "Skill Tran," apparently referring to the Skill Tran source "Job Browser Pro." (AR 496). The VE explained that she also collects information about job numbers as she meets with individuals that she counsels, but she does not "utilize that information to bring it in here [to the hearing] to compare it, no." (Id.). Plaintiff's counsel asked the VE, "Does that [number] represent the number of jobs that exist for those DOT individual codes that [the VE] identified or does that represent like an aggregate group of occupations?" (AR 498). The VE replied, "It's an aggregate number." (Id.). The VE did not elaborate further, and no further questions were asked about the VE's job numbers.

Plaintiff contends that it is clear that the VE "did not testify that each of the three occupations had approximately 426,000-427,000 each; rather the 426,000-427,000 number for each occupation represents . . . the total aggregate number for a group of unidentified occupations." (Joint Stip. at 26-27). Thus, Plaintiff claims that the ALJ erred by relying on a mischaracterization of the VE's testimony to find that the respective job numbers applied to the three particular occupations. (Id. at 27). Plaintiff asserts that Skill Tran actually groups each of these three jobs with hundreds of other occupations, and the VE's "aggregate" job numbers should be understood to apply to these larger groups. (See id. at 28-30). For example, Plaintiff states that Skill Tran groups the garment folder occupation with 553 other occupations in the category "Helpers –

14

Production Workers." (Id. at 28).[4] Plaintiff points out that if the VE's "aggregate" number of 427,000 jobs were divided evenly among each of the 553 occupations, it would result in only 770 garment folder jobs and claims that "Skill Tran demonstrates that in fact only 63 full time jobs are available for the specific DOT code of garment sorter." (Id.).

Plaintiff never raised this issue before the Commissioner. Though he was represented by counsel, Plaintiff did not challenge the basis or accuracy of the VE's job numbers during administrative proceedings. Plaintiff, therefore, has waived the issue. See Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) ("We now hold that when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant waives such a challenge on appeal, at least when that claimant is represented by counsel."); see also Meanel v. Apfel, 172 F.3d 1111 (9th Cir. 1999) (holding that claimants represented by counsel "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal").

Regardless of waiver, however, Plaintiff has failed to establish any error in the ALJ's step-five finding. Notwithstanding Plaintiff's contentions, the ALJ was entitled to rely on the VE's testimony on job numbers, which constitutes substantial evidence.

---

[4] Plaintiff cites "Exhibit 1," but no such exhibit has been filed in this action. Regardless, the absence of the referenced exhibit – which presumably contains the Skill Tran data – does not affect the Court's analysis. There is no indication that Plaintiff ever presented such information to the ALJ or the Appeals Council.

15

See Bayliss, 427 F.3d at 1218. The record does not contradict the ALJ's finding in this respect, nor does it show that the ALJ misinterpreted or mischaracterized the VE's testimony. The VE explicitly stated that there are "approximately 427,000" garment folder jobs in the national economy; approximately 426,000 table worker jobs; and approximately 472,000 dowel inspector jobs. (AR 491). The VE did not undermine this testimony when stating, in response to Plaintiff's counsel's question, that the number given for each job is "an aggregate number." (See AR 498). This statement, at best, is ambiguous. The ALJ appropriately exercised his discretion in relying on the VE's testimony to find that there are significant numbers of jobs in the national economy that Plaintiff can perform. The Court must uphold that reasonable finding. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 13, 2018

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

16